UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RACHAEL K.,<br><br>                      Plaintiff,<br>     v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Case No. 2:24-cv-00140-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for [supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by this Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

      On February 18, 2016 plaintiff applied for DIB and SSI alleging a disability onset date of June 5, 2015. AR 542. The application was denied initially and upon reconsideration and on July 28, 2022 a hearing was held in front of ALJ Laura Valente. AR 62-93. On August 11, 2022 ALJ Valente issued a decision finding plaintiff not to be

disabled. AR 94-108.[1] The Appeals Council declined the request for review. AR 1-4. Plaintiff filed this appeal.

The ALJ found plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD). AR 100. As a result, the ALJ found plaintiff had the Residual Functional Capacity to perform a full range of work at all exertional capacities with these limitations:

> [t]he claimant can work superficially and occasionally with the general public. She can interact occasionally with supervisors, and she can work in the same room with coworkers but cannot participate in coordination of work activity . The claimant can sustain concentration to perform simple tasks, and she can adapt to occasional, simple workplace changes.

AR 102. The ALJ found that plaintiff could perform the following jobs: Hand Packager, DOT 920.587-018, Waxer, Floor, DOT 318.687-034, Cleaner II, DOT 919.687-014. AR 107.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

---

[1] Thia is the second ALJ decision on this application, the first was remanded by the Appeals Council. *See* AR 97.

1  evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*
2  The Court may not affirm the decision of the ALJ for a reason on which the ALJ did not
3  rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of
4  the Court's review. *Id.*

DISCUSSION

**1. Medical evidence**

    **A. Acceptable medical sources**

Plaintiff challenges the ALJ's assessment of the opinions of examining psychologists Jan Kouzes, Ed.D., M. Liddell, M.D., Anja Luthi, Psy.D., and Tasmyn Bowes, Psy.D. Dkt. 9 at 4.

Plaintiff filed their application[s] before March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not

constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). Even so, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

      i.      Dr. Jan Kouzes, Ed.D.

On December 9, 2015 Dr. Kouzes completed a psychological/psychiatric evaluation of plaintiff including a review of records, a clinical interview, a medical source statement, and a mental status exam. AR 586-90. Dr. Kouzes opined that plaintiff would have a "marked" limitation in the following basic work activities: "understand, remember, and persist in tasks by following detailed instructions," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision," "communicate and perform effectively in a work setting," "maintain appropriate behavior in a work setting," "complete a normal work day and work week without interruptions from psychologically based symptoms." AR 588-89. Dr. Kouzes opined plaintiff would have a moderate limitation in the following basic work activities: "learn new tasks," "perform routine tasks without special supervision," "adapt to changes in a routine work setting," and "set realistic goals and plan independently."

*Id*. Dr. Kouzes opined plaintiff would have "none or mild" limitation in every other basic work activity and assigned an overall severity rating of "marked." AR 589

The ALJ assigned Dr. Kouzes' opinion "some weight," because a moderate limitation in the ability to perform simple tasks without special supervision was inconsistent with her ability to live independently, the caretaker role plaintiff had taken on with her friend. AR 104. She also found the social limitations contradicted some records that reported plaintiff benefitting from in-person college courses. *Id*.

A material inconsistency between a doctor's opinion and a claimant's activities can furnish a proper reason for rejecting a physician's opinion. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities). Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017) (activities such as shopping for groceries, attending church every week, or watching television, did not establish plaintiff could maintain regular work attendance); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (activities showing inconsistency with plaintiff's testimony about their capabilities, or activities consistent with requirements of actual full-time work, would be relevant).

As for living alone, the ALJ cited plaintiff's testimony that she goes grocery shopping alone, cooks, and performs household chores. AR 104.The ALJ did not explain how the ability to live independently contradicted Dr. Kouzes' opinion that

5

1  plaintiff would have a "marked" limitation in the ability to "perform an activity within a
2  schedule, maintain regular attendance, and be punctual within customary tolerances
3  without special supervision," and a "moderate limitation in the ability to "perform routine
4  tasks without special supervision" in the workplace. *See* AR 588.

5  As for caretaking, the ALJ cited a note where plaintiff reported to a provider that
6  she was overwhelmed with having multiple roles in her friend's life as his friend,
7  companion, girlfriend, and caretaker, and "he is very dependent on her for activities of
8  daily living including important decision making." AR 1541. As plaintiff notes, the note
9  cited by the ALJ provides little information on the extent of plaintiff's caretaking
10 responsibilities. *See* AR 1541.

11 Plaintiff testified during the hearing that she sees her partner about once a week
12 and she described challenges with that relationship, "he also has mental illness and is
13 diabetic, so his mood swings a lot, and I find that I am very irritable with him and
14 abusive towards him because I have a low tolerance for the frustration that I feel in
15 speaking with him." AR 85. The record does not demonstrate the extent of plaintiff's
16 caretaking. Therefore, the ALJ erred in determining that this clashed with Dr. Kouzes'
17 assessment that plaintiff would have difficult performing simple tasks without special
18 supervision.

19 As for community college, the ALJ cited a note where plaintiff addressed her
20 frustrations with school to a provider, including the fact that she was struggling in her
21 Spanish class, took up to six hours to complete homework, and felt that she benefitted
22 more from classes on campus, noting that she was lonely but also "hates people" and
23 "feels more secure being around others but not necessarily compelled to make

connections." 1067. The ALJ did not explain how this conflicted with the social limitations opined by Dr. Kouzes which included the ability to "communicate and perform effectively in a work setting," and "maintain appropriate behavior in a work setting" and it is unclear from the record. *See* AR 589. At the hearing plaintiff testified that she had several difficult instances with teachers and at one point yelled at a fellow student who irritated her because plaintiff felt that she would not stop talking and disturbing the class. AR 83-84. On another occasion a male model arrived at her class early and she became so agitated that he was talking that she threw a mug so he would stop talking. AR 80.

      Multiple counseling notes throughout the record reflect these challenges. On February 3, 2017 plaintiff reported that she was upset by a speaker that came to class that reminded her of her past and this caused her not to be able to attend her next class. AR 676 On April 29, 2019 plaintiff expressed her frustration with staff in the registration department and described them as incompetent. AR 1324. On October 25, 2019 she expressed frustration with her class and expressed how much she disliked the teacher. AR 1237. On May 28, 2020 plaintiff reported that her PTSD was triggered in class by a sculptor who was pregnant which led to a graphic description of plaintiff's miscarriage. AR 1143. Plaintiff also submitted a letter dated October 5, 2022 where she detailed many altercations between herself and various faculty members and other individuals on campus that severely interfered with her ability to complete her classes prior to accessing disability services that allowed for accommodations. AR 582-84. The record does not support the ALJ's conclusion that the benefits plaintiff reported from in-person classes contradicted the social limitations opined by Dr. Kouzes.

1    Accordingly, the ALJ failed to provide clear and convincing reasons for discounting Dr. Kouzes' opinion.

ii.    Dr. M. Liddell, M.D.,

On July 6, 2016 Dr. Liddell completed an evaluation of plaintiff including a review of records, mental status examination, and functional assessment/ medical source statement. AR 658-64. Dr. Liddell opined that plaintiff would not have an obvious impairment in her ability to manage funds, perform simple and repetitive tasks, perform detailed and complex tasks, or maintain regular attendance in the workplace, but she has tendency toward interpersonal conflicts that would impair her ability to complete a normal workday or workweek without interruptions, manage usual workplace stress, interact with coworkers and the public, and accept instructions from supervisors. AR 664.

The ALJ assigned Dr. Liddell's opinion "some weight," because "Dr. Liddell opines no obvious impairment in the claimant's ability to perform work activities on a consistent basis or maintain regular attendance in the workplace but also opines an impairment in her ability to complete a normal workday or workweek." AR 104. The ALJ also found Dr. Liddell's opinion to contradict her own observations and examination. *Id*.

In the reply brief, plaintiff acknowledges the ALJ reasonably read Dr. Liddell's statements to be contradictory but argues that it is unclear why the ALJ did not credit the portions of Dr. Liddell's opinion that were supported by the record. Dkt. 14 at 4-5.

An ALJ may reject an opinion for internal inconsistency. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet the ALJ must consider the context of the opinion

in the record, including observation and treatment notes. *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

Here the ALJ found Dr. Liddell's opinion that plaintiff would face significant disruptions in consistent work performance or attendance was not supported by her observations that plaintiff attempted good persistence in attempting tasks, or with her ability to attend college classes, and she managed to perform a range of cognitive tasks during the examination. AR 104. But, Dr. Liddell opined that plaintiff was "notable for being cognitively intact but significantly tense and defensive." AR 664.

Furthermore, in the functional assessment/ medical source statement Dr. Liddell specified that "[plaintiff's] psychiatric symptoms including her anxiety and demonstration of a tendency toward interpersonal conflicts due to cognitive distortions" are what would cause the opined limitations. AR 664. Therefore, the data points the ALJ assessed to vary from Dr. Liddell's opinion do not reflect the sources of limitation that Dr. Liddell identified. The ALJ thus did not identify a clear and convincing reason for discrediting this portion of Dr. Liddell's opinion.

iii.     Dr. Anja Luthi, Psy.D.,

On November 16, 2017 Dr. Luthi completed a psychological/ psychiatric evaluation of plaintiff including a review of records, a clinical interview, a medical source statement, and a mental status exam. 782-87. Dr. Luthi opined that plaintiff would have a "marked" limitation in the following basic work activities: "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision," "communicate and perform effectively in a work setting," "maintain appropriate behavior in a work setting," and "complete a normal work day and

9

1  work week without interruptions from psychologically based symptoms." 785. Dr. Luthi
2  opined plaintiff would have a moderate limitation in the following basic work activities:
3  "understand, remember, and persist in tasks by following very short and simple
4  instructions," "learn new tasks," "adapt to changes in a routine work setting," "make
5  simple work-related decisions," and "set realistic goals and plan independently." AR
6  785. She opined plaintiff would have "none or mild" limitation in every other basic work
7  activity and assigned an overall severity of "marked." *Id*.

8        The ALJ assigned Dr. Luthi's opinion "some weight" but discredited it because
9  the marked limitations opined conflicted with plaintiff's ability to attend community
10 college, transition to working toward a bachelor's degree with a GPA of 3.5, her ability to
11 live independently, or her caretaker role with her friend. AR 105.

12       As discussed above, plaintiff's ability to live independently, take on a caretaker
13 role, and attend community college were not clear and convincing reasons. As for her
14 ability to work towards a bachelor's degree with a current GPA of 3.5, the ALJ
15 disregarded the context of plaintiff's schooling. Here the "marked" limitations opined by
16 Dr. Luthi involved her ability to maintain a regular schedule and attendance,
17 communicate effectively, maintain appropriate behavior, and complete a workday or
18 work week without interruptions from her symptoms. *See* AR 785. The record, including
19 plaintiff's academic success, reflects the challenges opined by Dr. Luthi. As described
20 above, plaintiff faced multiple difficulties communicating with others and maintaining
21 appropriate behavior in community college. And plaintiff was approved for
22 accommodations that allowed her to receive alternative assignments based on a
23 potential difficulty with the "content, format, or topics" of some assignments. AR 550.

24
25

Her accommodations began in Fall 2019 and continued at least until Spring 2022. AR 548.

She testified that she was pursuing her associate degree for six years on a part-time basis, only taking two classes per semester. AR 77. She also testified that she had not been accepted into another program at the time of the hearing. AR 78. The record does not support the conclusion that plaintiff's ability to achieve milestones with her education contradicted the limitations opined by Dr. Luthi. Accordingly, the ALJ failed to provide clear and convincing reasons for discounting this opinion.

    iv.    Dr. Tasmyn Bowes, Psy.D.

On September 5, 2019, Dr. Bowes completed a psychological/ psychiatric evaluation of plaintiff including a review of records, a clinical interview, a medical source statement, and a mental status exam. AR 966-70. Dr. Bowes opined that plaintiff would have a "severe" impairment in the following basic work activities: "communicate and perform effectively in a work setting," "maintain appropriate behavior in a work setting," and "complete a normal work day and work week without interruption from psychologically based symptoms." AR 969. Dr. Bowes opined that plaintiff would have a "marked" limitation in the following basic work activities: "understand, remember, and persist in tasks by following detailed instructions," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision," "adapt to changes in a routine work setting," "ask simple questions or request assistance," "set realistic goals and plan independently." *Id*. Dr. Bowes opined plaintiff would have a moderate limitation in all other basic work activities aside from "be aware of normal hazards and take appropriate precautions," which she

assigned as "none or mild." *Id*. ARNP Bowes assigned an overall severity rating of "marked." *Id*.

The ALJ assigned this opinion "limited weight" and found it was inconsistent with: plaintiff's ability to obtain an associate degree and transition to a bachelor's degree with a GPA of 3.5, ability to live independently, the caretaker role she had assumed for her friend, and treatment notes stating plaintiff's symptoms noticeably improved when she started medication. AR 105.

As discussed above, plaintiff's academic achievements, ability to live independently, and her caretaking role were not clear and convincing reasons. As for the last reason, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill,* 867, 876 (9th Cir. 2017). Here the ALJ cited to 21F/ 246, 253, 294. Yet the notes cited by the ALJ do not support this conclusion.

For example, plaintiff was prescribed risperidone on August 16, 2019 (AR 1254) and on November 22, 2019 plaintiff reported that she felt taking risperidone had been helpful with her moods but just barely. AR 1248. On April 27, 2020 plaintiff reported she was irritable when taking a higher dose of risperidone and so her dose was decreased. AR 993. On June 19 2020, she reported that her medications kept her off the floor in terms of her depression and reduced her times spent crying but felt it made her more angry (not less, as intended). AR 1125. On January 27, 2021 a provider reported plaintiff was "calmer and more redirectable on her medications but still quite symptomatic." AR 1022. She adjusted her medications multiple times throughout the record and on May 25, 2022; her provider noted "she has been highly symptomatic as

12

long as I have known her despite good faith engagement without treatment recommendations. AR 1616-17.

The record, therefore, does not support the conclusion that plaintiff's symptoms noticeably improved with medication, and plaintiff's treatment results were not contradictory with Dr. Bowes' opinion. The ALJ did not provide clear and convincing reasons for discounting Dr. Bowes' opinion.

### B. Non-acceptable medical sources

Plaintiff also challenges the ALJ's evaluation of plaintiff's treating nurse practitioner, Nissa Freed, ARNP.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). And where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694* (9th Cir. 2009).

In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

ARNP Freed opined that plaintiff's trauma from the past would interfere with her ability to stay on task for a two-hour period more than once a day, would cause lapses in concentration lasting 15 minutes to an hour, would cause her to take twice as long to perform tasks as the average person, and would cause her to miss work more than once a week. AR 1636-37. She also opined that plaintiff would be unable to work in coordination or proximity to others, and would be unable to interact with the public, respond appropriately to criticism from supervisors, ask simple questions or request assistance; she also opined that plaintiff would distract her co-workers with behavioral extremes such as yelling or crying. AR 1637-38.

The ALJ assigned ARNP Freed's opinion "little weight," and discounted it because the extreme limitations opined contradicted plaintiff's ability to obtain an associate degree and transition to a bachelor's degree with a GPA of 3.5, ability to live independently, and the caretaker role she had assumed for her friend. AR 105-06.

For the reasons discussed above the reasons provided were not supported by substantial evidence and were thus not reasonably germane reasons for discounting ARNP's opinion.

**C.  Harmless Error**

An error inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054; *see also, Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008);

*Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The RFC did not include the limitations opined by these medical sources who opined significant limitations with attendance and relating appropriately to supervisors and the public. At the hearing, the vocational expert responded to questions by plaintiff's attorney confirming any of the following attributes would preclude competitive employment: missing one day of work per month, needing additional breaks for more than 15 minutes at unexpected times, an inability to be in the same room with coworkers without distracting coworkers, exhibiting behavioral extremes that would distract coworkers, working at a pace of ten percent slower than the expected outcome, or responding with anger or yelling to criticism or direction from supervisors. AR 90-92. Had the ALJ included the limitations opined by the medical sources it likely would have resulted in a more restrictive RFC. The error was therefore not harmless.

**2. Plaintiff's statements regarding subjective symptoms**

Plaintiff also challenges the ALJ's assessment of her testimony. Dkt. 9 at 17.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony about the severity of his symptoms for specific, clear, and convincing

reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

At the hearing, plaintiff testified that her school performance changed after beginning medication because it dulled her feelings, but did so to the extent that she struggled to connect with anyone or anything. AR 82. She testified that she did not believe she could attend school full-time given her mental health symptoms. *Id*. She testified that prior to receiving accommodations in school she sometimes had to change classes, got into arguments with teachers, or had to fail or not take a test. AR 83. Her accommodations allowed her to say she needed something else to work on without having to explain why. *Id*.

She testified that she takes clonazepam for anxiety and sometimes she can't function with stimulation from her thoughts or feelings and goes to sleep. AR 84. She testified that she naps every day for between 30 minutes and five hours. *Id*. She testified that she does not have any friendships, avoids having interactions with people, and struggles in her relationship with her partner. AR 84-85. She testified that she cleans whenever she thinks she needs to. AR 86. Plaintiff conveyed that she had been threatened with the police and restricted from the premises when police told her she could not go back into an employer's building. AR 86.

The ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her improvement with medication, and her ability to engage in in person and online college courses since the amended onset date. AR 103.

The Court has already discussed why these reasons are not clear and convincing reasons, supported by substantial evidence. Accordingly, the ALJ erred in assessing plaintiff's testimony. The error was not harmless because the ALJ did not include the social and attendance-based limitations alleged by plaintiff.

### 3. Whether the Court should reverse with a direction to award benefits.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. Dkt. 9 at 18. The ALJ's decision discounting plaintiff's statements about symptoms and limitations and discounting medical opinion evidence Drs. Kouzes, Liddell, Luthi, Bowes, and lay witness evidence of ARNP Freed, was affected by harmful reversible error. There is no ambiguity in the record that would need to be resolved on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (Court is required, before remanding for award of benefits, to review the record to determine whether "essential factual issues" have all been resolved).

The Court is mindful that providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

Crediting opinions of Drs. Kouzes, Liddell, Luthi, Bowes, and ARNP Freed, as well as plaintiff's statements, as true, particularly regarding plaintiff's social imitations, taking frequent unscheduled naps and breaks, and attendance limitations, the ALJ would have to find plaintiff disabled on remand. 586-90, 658-64, 782-87, 966-70; *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits.").

Accordingly, remand for an award of benefits is the appropriate remedy.

CONCLUSION

For these reasons, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for an award of benefits.

Dated this 23rd day of December, 2024

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge